UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GABRIEL ECKARD,<br><br>                    Plaintiff,<br><br>  v.<br><br>MECHELLE WOODS, et al.,<br><br>                    Defendants. | CASE NO. 2:18-cv-00964-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

      Defendants Monroe Correctional Complex (MCC) Special Offender Unit (SOU) Superintendent Jack Warner, MCC Twin Rivers Unit (TRU) Superintendent Eric Jackson, MCC SOU Associate Superintendent Lisa Anderson, MCC Associate Superintendent Michele Wood, and MCC SOU Unit Supervisor Kathryn Grey move for summary judgment dismissal of Plaintiff Gabriel Eckard's 42 U.S.C. Section 1983 allegations. Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by denying him "outdoor exercise outside of his cell" for approximately five months and that he was deprived of cleaning products to clean his cell for approximately four months. Dkt. 7 at 5. Plaintiff seeks injunctive relief and compensatory and punitive damages in the amount of $1 million against each defendant. *Id.* at 8-9.

      Defendants contend they are entitled to summary judgment dismissal of Plaintiff's claims because there are no genuine issues of material fact, they did not violate Plaintiff's constitutional

REPORT AND RECOMMENDATION - 1

1  rights, they are entitled to qualified immunity from any damage claims, and Plaintiff's injunctive

2  relief claims are moot because Plaintiff is no longer in DOC custody.

3        Plaintiff filed no response to Defendants' motion. Pursuant to Fed. R. Civ. P. 56(e), the

4  Court may grant summary judgment in Defendants' favor if the motion and supporting materials,

5  including the facts considered undisputed, show Defendants are entitled to it.

6        The undersigned recommends the Court grant Defendants' motion for summary judgment

7  and dismiss Plaintiff's claims with prejudice.

8  **STATEMENT OF FACTS**

9  **A.     Cleaning Supplies**

10        Plaintiff alleges that from January 2, 2018 through May 5, 2018, he and the "rest of the

11  population of Unit-A" were deprived of cleaning products to clean their cells. Plaintiff alleges

12  that when he tried to resolve the issue with Defendant Grey, she told him that inmates in SOU-

13  A/13 units are not allowed cleaning products for their floors. Dkt. 7 at 5. When he attempted to

14  resolve the issue with Defendants Anderson, Warner, and Jackson, no action was taken to

15  remedy the situation and provide the cleaning products. *Id.*

16        Kathryn Grey is currently employed by the Washington DOC as a Correctional Mental

17  Health Unit Supervisor (CMHUS) at the MCC in Monroe, Washington. Ms. Grey has worked for

18  DOC for 20 years. She was the Supervisor of the A/B Unit of the SOU of MCC from October

19  2016 to February 12, 2018, at which time CMHUS Asen Deshev became the Supervisor of A/B

20  Unit. As the Supervisor of A/B Unit, Ms. Grey was familiar with the operations of the unit and

21  the policies that applied to the staff and the inmates in the Unit. Ms. Grey did not work in A/B

22  Unit after February 12, 2018, and had no supervisory authority over the unit after this date. Dkt.

23  17, Declaration of Kathryn Grey, at ¶ 2.

REPORT AND RECOMMENDATION - 2

To the best of Ms. Grey's knowledge, during the time she was the Supervisor of the A/B units of MCC SOU, the staff in A-Unit offered inmates supplies to clean their cells twice per week. The supplies offered included rags and a paper cup of mild, non-toxic cleaner. Inmates were not offered or provided toxic or caustic cleaners because these could be used for self-harm or as a weapon against staff. Even if staff did not provide an inmate with cleaning supplies, there is no reason why an inmate in A-Unit could not have a clean cell without such supplies because all the cells in A-Unit are single man cells that are equipped with sinks, showers, and toilets with clean, running water and the inmates have soap, toilet paper, and towels in their cells that they can use to clean their cells. *Id*., ¶ 4.

Ms. Grey does not recall any problems in A-Unit with inmates not having cleaning supplies during the time Plaintiff was in A-Unit. Plaintiff did request a broom or a mop to clean his cell and this request was denied for security reasons as a broom or mop can be used as a weapon. Ms. Grey was not aware that Plaintiff had an unsanitary cell or claimed to have an unsanitary cell during this time. Ms. Grey is also unaware of other inmates being unable to clean their cells due to a lack of cleaning supplies or that any inmates were forced to live in unsanitary cells. Because A-Unit houses many inmates with severe mental issues, there were times when inmates in this unit would either allow or cause their cells to become unsanitary. Whenever this occurred, unit staff would respond as soon as possible and take whatever actions were required to make the cell sanitary and habitable. This often involved removing the inmate from the cell and having inmate porters thoroughly clean the removed inmate's cell. *Id*., ¶ 5.

Ms. Grey never told Plaintiff that A-Unit inmates were not entitled to cleaning products for their floors. She was not and is not aware that Plaintiff had an unsanitary cell or that he suffered any harm or injury as a result of having an unsanitary cell. *Id*., ¶ 6.

Ms. Grey recalls Plaintiff quite well as one of the most abusive and demanding inmates she has ever had to deal with. SOU normally houses DOC inmates with mental health issues ranging from moderate to severe. However, Plaintiff was transferred from the MCC Intensive Management Unit (IMU) to A-Unit of MCC SOU not because of mental health issues but only because he had been so abusive to two IMU staff members that DOC ordered that he be kept separate from those staff members. Mental health staff had determined that Plaintiff did not have major mental illness. *Id.*, ¶ 7.

**B.     Outdoor Exercise**

Plaintiff alleges that from January 1, 2018 through May 1, 2018, he was deprived of outdoor exercise. Plaintiff's cell was located in SOU/Unit A, which is part of the Intensive Treatment Unit (ITU), where inmates are in solitary confinement. Dkt. 7 at 4. Plaintiff claims that when he attempted to resolve the issue with Defendant Mechelle Woods, she provided him with a written response stating that Plaintiff "has no rights because he is a Maximum custody offender." *Id.* at 5.

Plaintiff was in DOC custody from April 2013 until September 4, 2018, and during that time, was found guilty of committing serious infractions over 300 times (34 times in 2018). Dkt. 17, Grey Decl., ¶ 8. The infractions Plaintiff committed in 2018 while in A-Unit of SOU were exceptionally abusive and vile, often involving threats to injure, stab, shoot, rape, or kill staff members or their spouses or children, and racially derogatory comments and epithets directed at staff members. Plaintiff had lost all his good conduct time for infractions he committed prior to 2018, therefore about the only sanctions that could be imposed on Plaintiff for committing infractions in 2018 were the loss of privileges. Plaintiff was sanctioned to the loss of outdoor yard privilege several times in 2018 as a result of committing serious infractions. This was not

REPORT AND RECOMMENDATION - 4

unusual as it was not uncommon for an inmate in A/B unit to lose outdoor yard for a period of time as a result of committing serious infractions. The outside yards for A/B Unit are known by staff and inmates as the "silos". *Id*., ¶ 8.

Ms. Grey is unaware of any harm or injury to Plaintiff from not having outdoor yard in A-Unit while she was the Supervisor of this unit and does not believe Plaintiff was harmed or would be harmed from not having outside yard for several reasons. First, Plaintiff did not advise Ms. Grey that he was suffering any harm from not having outdoor yard and Ms. Grey is not aware of him telling any other A-Unit staff member that he was suffering harm from not getting outdoor yard. Second, all inmates are entitled to one hour of out-of-cell exercise time five days per week under DOC's regulations and DOC policy 320.255, therefore, inmates who lost outdoor yard as a result of committing infractions would still get five hours per week of exercise time in the indoor yard. The opportunity for an inmate to exercise was at least as good in the inside yard as it was in the outdoor yards. The inside yard was quite a bit larger than the outside yards and had a basketball hoop and basketballs, whereas the outdoor yards had, at most, a pull-up bar. *Id.*, ¶ 9.

Third, while inmates who had lost outdoor yard privileges could not exercise in the outdoor yard, they still had opportunities every week to be in the outdoor yard and get some natural light and fresh, outdoor air. This is so because inmates shaved and had attorney calls only in the outdoor yards. Inmates could shave three times per week and could have an attorney call every day. While inmates were generally allowed only about 10-15 minutes to shave, there was no limit on the length of attorney calls, many of which lasted over a half of an hour. Finally, inmates in A/B unit had daily access to both medical staff and mental health staff and mental

REPORT AND RECOMMENDATION - 5

1  health staff were often consulted with respect to the appropriateness of particular disciplinary
2  sanctions. *Id*.

3　　　　Ms. Grey reviewed the Daily Report of Segregated Offender log for Plaintiff from late
4  January 1, 2018, to July 1, 2018. This Report is an official DOC record and is designed to be a
5  running record of specified actions that occur each day concerning the particular inmate who is
6  in segregation, including the provision of meals and other items, certain cell visits by staff,
7  activities the inmate engages in outside his cell, etc. This log also shows if the inmate has refused
8  any of the items or services offered to him. *Id*., ¶ 10.

9　　　　Plaintiff's Daily Report of Segregated Offender (Report) shows that he was regularly
10 offered yard in the first six months of 2018 and that roughly two thirds of the time he refused to
11 take yard. The Report shows that he refused yard at least 44 times during this time period. On
12 most of the days Plaintiff refused yard, it is unclear whether he would have been given outside
13 yard or inside yard, but it appears likely to Ms. Grey that on at least some of these days he would
14 have been given outdoor yard. The Report also shows that Plaintiff clearly had yard in one of the
15 outside yards, the "silos", at least eight times during this period. The Report also shows that
16 Plaintiff took yard at least 12 other times during this period, most of which were probably inside
17 yard, but some of which may have been outside yard. The Report also shows that Plaintiff
18 shaved in an outside yard on 12 days in this period and had attorney calls in an outside yard on
19 18 days in this period; on several of the foregoing days he both shaved and had an attorney call
20 while in one of the outdoor yards. *Id*., ¶ 11.

21　　　　According to Ms. Grey, Plaintiff had ample opportunities for exercise and to be in the
22 outdoor yards while shaving, having attorney calls, and, on occasion, for yard. Ms. Grey saw no
23 evidence, and has no reason to believe, that Plaintiff suffered any injury or harm as a result of the

REPORT AND RECOMMENDATION - 6

disciplinary sanctions of the loss of outdoor yard. Ms. Grey also has no reason to believe that the sanctions of the loss of outdoor yard were imposed in bad faith or for the purpose of causing harm to Plaintiff and believe these sanctions were imposed only in an effort to try to get Plaintiff to modify his abusive and disruptive behavior towards staff. *Id.*, ¶ 12.

Michele Wood is currently employed by the Washington DOC as the Associate Superintendent of the Twin Rivers Unit of MCC in Monroe, Washington. Ms. Wood has been a DOC employee for 29 years. One of her duties as an Associate Superintendent is to decide disciplinary appeals as the designee of the MCC Superintendent. Dkt. 18, Declaration of Michele Wood, ¶ 1.

Ms. Wood is familiar with Plaintiff as he was an extremely difficult and abusive inmate who committed well over 300 major infractions during the roughly five and a half years he was in DOC custody. Plaintiff committed, and was found guilty of, serious infractions on 30 separate occasions between January 1, 2018, and July 1, 2018. Many of his infractions involved threats to injure, rape or kill MCC staff and some of his infractions involved racial slurs and epithets directed at staff. Plaintiff would often not attend his disciplinary hearings but would nonetheless sometimes file appeals of the hearing officer's decisions to the facility Superintendent. *Id.*, ¶ 3.

Because Plaintiff had lost all his good conduct time for violating prison rules prior to 2018, the hearing officer who found Plaintiff guilty of committing serious infractions in late 2017 and in 2018 was limited to taking privileges away from Plaintiff when he violated prison rules. One of the privileges a hearing officer may take from an inmate under DOC policy 460.050 is recreation, which includes yard and gym. However, under DOC policy 320.255 an inmate in a segregation unit must be allowed out-of-cell exercise for one hour, five days per week. As such, for inmates like Plaintiff who are in segregation, a hearing officer cannot take all

REPORT AND RECOMMENDATION - 7

1  yard but can take outside yard as long as the inmate has the opportunity to take inside yard as
2  required by DOC policy 320.255. *Id*., ¶ 4.

3  The hearing officer sanctioned Plaintiff to the loss of privileges, including the loss of
4  outdoor yard, numerous times for serious infractions Plaintiff committed in late 2017 and in
5  2018. Plaintiff appealed some, but not all, of the infractions he received in late 2017 and 2018 in
6  which he was sanctioned to the loss of outdoor yard and Ms. Wood decided most, if not all, of
7  Plaintiff's disciplinary appeals on behalf of the MCC Superintendent. Plaintiff usually asserted in
8  his appeal that a hearing officer could not sanction an inmate in segregation to the loss of outside
9  yard under Wash. Admin. Code § 137-32-030 (2018) and DOC policy 320.255. Plaintiff also at
10 times asserted in his appeals that the loss of outdoor yard was not a legal sanction and violated
11 his constitutional rights. Ms. Wood denied Plaintiff's appeals and advised him in the appeal
12 responses that under DOC policy the loss of outdoor yard is an available sanction which Ms.
13 Wood believes was appropriately imposed by the hearing officer in these instances. *Id*., ¶ 5.

14 While Plaintiff appealed the loss of outdoor yard sanctions, he never advised Ms. Wood
15 that he had suffered any discernible harm or injury from being sanctioned to the loss of outside
16 yard for committing serious infractions and Ms. Wood is not aware of any such harm or injury to
17 Plaintiff or to any other inmate. Plaintiff would be allowed inside yard which, to Ms. Wood's
18 knowledge, would have offered him the same opportunity for recreation and exercise as the
19 outside yard. Plaintiff would also have been allowed to go to the outside yard for attorney phone
20 calls and to shave several times per week. Plaintiff was, to the best of Ms. Wood's knowledge,
21 given ample opportunities for out-of-cell recreation and exercise while he was in A-Unit and was
22 appropriately limited at times to indoor yard as a result of his infractions which posed a threat to
23 the health and safety of unit staff. *Id*., ¶ 6.

REPORT AND RECOMMENDATION - 8

To the best of Ms. Wood's knowledge, Plaintiff always had access to medical and mental health professionals while housed in A-Unit. If Plaintiff was experiencing any sort of harm or distress as a result of limited opportunities for outside yard, he could have addressed this with medical or mental health staff who could have taken appropriate actions, including possibly overriding the hearing officer's sanctions of the loss of outdoor yard. Ms. Wood was never advised by institution medical or mental health staff that Plaintiff was experiencing any harm or discomfort from not having outdoor yard. *Id*., ¶ 7.

Plaintiff failed to either timely appeal or file any appeal at all on many of the infractions Plaintiff received in 2018 for which he was sanctioned to the loss of outdoor yard. In Infraction No. 301 Plaintiff was found guilty of threatening staff and was sanctioned to 30 days loss of outdoor recreation. Although the disciplinary hearing on this infraction occurred on January 5, 2018, Plaintiff did not appeal this infraction until March 29, 2018. This appeal was not decided on its merits and was denied only because it was well beyond the 15 working days that inmates have to file an appeal from a disciplinary hearing. Plaintiff was also found guilty of 10 serious infractions from April 2, 2018, to May 21, 2018, for which he was sanctioned to the loss of outdoor yard but did not appeal. These include Infraction Nos. 314-315, 318-319, and 322-327. Ms. Wood was not involved in these 10 infractions or the sanctions imposed for these infractions. Plaintiff would have served the loss of outdoor yard sanctions from these 10 infractions from early April 2018 until the date he released from DOC custody, September 4, 2018. *Id*., ¶ 8.

## SUMMARY JUDGMENT STANDARD

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (2010). In

REPORT AND RECOMMENDATION - 9

support of a motion for summary judgment, the moving party need not negate the opponent's claim, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006).

The moving party bears the burden of showing that there is no evidence which supports an element essential to the non-movant's claim. *Celotex*, 477 U.S. 322. In order to defeat a motion for summary judgment, the non-moving party must make more than conclusory allegations, speculations or argumentative assertions that material facts are in dispute. *Wallis v. JR Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

## DISCUSSION

Plaintiff's claims relating to his treatment during his confinement are subject to scrutiny under the Eighth Amendment. A prison official violates the Eighth Amendment only when two requirements are met: (1) the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison official must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825 (1994). Thus, the deprivation alleged by the inmate must be, objectively, "sufficiently serious", and subjectively, the prison officials must know of and must deliberately disregard the risk of harm to the inmate. *Farmer*, 511 U.S. at 834, 842. If one of the components is not established, the court need not inquire as to the existence of the other. *Helling v. McKinney*, 509 U.S. 25, 35 (2018).

Only those conditions of confinement that deny a prisoner "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment

REPORT AND RECOMMENDATION - 10

violation." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir.1993). For example, inmates are entitled to live in cells that do not pose an unacceptable risk to their health or safety. *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) (inmates entitled to "minimally sanitary cells" that do not threaten their health).

**A.     Denial of Cleaning Supplies**

Plaintiff has not shown that he was deprived of something sufficiently serious to establish a violation of the Eighth Amendment. Plaintiff lived in a single man cell with clean, running water in both a sink and a shower; he had soap, toilet paper, and towels in his cell; and he had mild cleaner and rags available to him twice a week. Dkt. 17, Grey Decl., ¶ 4. Plaintiff does not allege that his cell was unsanitary or unhealthy, or that he suffered any injury or harm as a result of the condition of his cell.

Plaintiff also fails to establish that any of the Defendants were deliberately indifferent to his right to live in a reasonably sanitary and healthy cell. Plaintiff does not allege that he advised any of the Defendants or any other staff member that his cell was unsanitary or that it presented a risk to his health or safety. Ms. Grey, the Supervisor of A-Unit, testified that she was not aware of any problems with sanitation in Plaintiff's cell. Dkt. 17, Grey Decl., ¶ 5.

Because there is no evidence that Plaintiff's cell was unsanitary or unhealthy or that Defendants were deliberately indifferent to his right to live in a reasonably sanitary or healthy cell, his Eighth Amendment claim for the denial of cleaning products should be dismissed with prejudice.

**B.     Denial of Outdoor Exercise**

"[O]rdinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation" for Eighth Amendment purposes. *LeMaire*, 12 F.3d 1444, 1457 (9th Cir.1993);

REPORT AND RECOMMENDATION - 11

*Lopez v. Smith*, 203 F.3d 1122, 1132–33 (9th Cir.2000) (en banc) (prohibition on outdoor exercise of six weeks is a "sufficiently serious" deprivation). If the prisoner can show his deprivation was objectively sufficiently serious, he must next "make a subjective showing that the deprivation occurred with deliberate indifference to [his] health or safety." *See, e.g.*, *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834). The Ninth Circuit has specifically identified these types of conditions claims as "context-sensitive," *Richardson v. Runnels*, 594 F.3d 666, 673 (9th Cir.2010), for they require consideration of the "individual facts of each case," *id.*, including the length and severity of the deprivation, the circumstances giving rise to it, and the deference owed to prison officials charged with both a "duty to keep inmates safe" and the need to establish order and security, which must be "balance[d] ... against other obligations that our laws impose." *See Norwood v. Vance*, 591 F.3d 1062, 1068–1070 (9th Cir.2010), *cert. denied*, ––– U.S. ––––, 131 S.Ct. 1465, 179 L.Ed.2d 299 (2011) (No. 09–1215). In short, because "a prisoner's right to outdoor exercise is [not] absolute and indefeasible, [nor does] it trump all other considerations," *id.* at 1068, it usually "require[s] a full consideration of context, and thus, a fully developed record." *Richardson*, 594 F.3d at 672 (citing *Norwood*, 591 F.3d 1062).

Here, the evidence reflects that Plaintiff had outdoor yard on numerous occasions during the time period at issue and was regularly offered other exercise opportunities and additional opportunities to be in the outdoor yard. Official unit logs show that Plaintiff had outdoor yard on at least eight occasions between January 11, 2018, and May 3, 2018. Dkt. 17, Grey Dec., Ex. 1. Plaintiff was in the outdoor yard 17 times for attorney calls and 12 times to shave between January 4, 2018, and June 9, 2018. *Id*. Plaintiff also refused yard, some of which were likely outside yard, on 44 occasions between January 1, 2018, and June 29, 2018. *Id*. On 12 other

REPORT AND RECOMMENDATION - 12

occasions between February 10, 2018, and June 16, 2018, Plaintiff took yard in what was likely the inside yard. *Id*. The foregoing facts demonstrate that Plaintiff was given ample opportunities for both exercise and to be in the outdoor yard which had natural light and fresh air.

Plaintiff has not alleged that he suffered any harm, either physically or psychologically, from being denied access to the outside yard as a result of his numerous infractions. In addition, there is no evidence that Ms. Wood was deliberately indifferent to his health or safety. To the contrary, the record shows that Ms. Wood was aware that Plaintiff would get exercise outside of his cell one hour per day, five days per week; that he would get several opportunities each week to be in the outdoor yard where he would get some natural light and fresh air; that he had access to an indoor yard; that he had access to medical and mental health staff; and, that Plaintiff never told her that he was experiencing any physical or mental harm from not getting more access to the outside yard. Dkt. 18, Wood Dec., ¶ 6. Ms. Wood was aware that taking outside yard was an available sanction under DOC's disciplinary policies and that under DOC's regulations and policies inmates were only entitled to out-of-cell exercise, not outdoor exercise. *Id*.

There is also no evidence that imposition of the sanction of loss of outdoor yard was arbitrary or capricious and in fact, the evidence reflects that there were few sanction options available because Plaintiff had lost all his good conduct time from prior serious infraction hearings. Dkt. 18, Wood Dec., ¶ 4. In addition, Plaintiff was not deprived of all opportunity to exercise as he could still exercise in his cell and he was allowed an equivalent measure of indoor yard, a yard which was larger than the outdoor yard and arguably provided a better opportunity for exercise than the outdoor yards. Dkt. 17, Grey Dec., ¶ 9. Plaintiff was also allowed to be in the outside yard on a regular basis for attorney calls and to shave, thus getting regular access to

both natural light and fresh air. *Id*. In fact, Plaintiff availed himself of his opportunities to be in the outdoor yard nearly 30 times during the relevant time frame of his complaint.[1] *Id*.

Based on the foregoing, the undersigned recommends Plaintiff's claim that his Eighth Amendment right to outdoor exercise was violated be dismissed.

**C.   Qualified Immunity**

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *see also Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). If the allegations make out a constitutional violation, the court must also determine whether the right alleged to have been violated was "clearly established." *Saucier*, 533 U.S. at 201.

A district court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 231-32. The court may grant defendants qualified immunity at any point the court answers either prong of the inquiry in the negative. *See e.g.*, *Tibbetts v. Kulongoski*, 567 F.3d 529, 536-39 (9th Cir. 2009) (bypassed

---

[1] Defendant Wood also notes that Plaintiff failed to timely appeal or did not appeal a number of infractions for which the sanction of loss of outdoor yard was imposed (Infraction Nos. 301, 314-315, 318-319, and 322-327). Ms. Wood had no authority to act on or reverse a disciplinary hearing officer's decision that was not appealed. Wash. Admin. Code § 137-28-380 (2018).

REPORT AND RECOMMENDATION - 14

the first prong and granted defendants qualified immunity because plaintiff's due process right was not clearly established at the time of alleged violation).

As there is no evidence that any of the defendants violated Plaintiff's constitutional rights, Defendants Mechelle Woods, Lisa Anderson, Kathy Grey, Eric Jackson, and Jack Warner are entitled to qualified immunity.

**D.     Injunctive Relief**

Plaintiff seeks injunctive relief, including an order requiring Defendants to provide him outdoor exercise "consistent with Department of Corrections policy and Washington State Law", and to provide him cleaning products to clean his cell no less than once a week. Dkt. 7 at 9.

"An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action." *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). As Plaintiff has been released from DOC custody, his claims for injunctive relief are moot and should be dismissed.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order.  Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **April 17, 2019.**  The Clerk should note the matter for **April 19, 2019**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and

REPORT AND RECOMMENDATION - 15

responses shall not exceed **seven (7)** pages.  The failure to timely object may affect the right to appeal.

DATED this 26th day of March, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 16